UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| Norberto Medina-Rodriguez<br><br>    Plaintiff<br><br>v.<br><br>[1] Farmacia Medina, Inc.<br><br>[2] Farmacia Medina Num 2, Inc.<br><br> [3] John Doe<br><br>    Defendant(s) | **CIVIL ACTION**<br><br>3:17-cv-01672-FAB-BJM |

**MOTION REQUESTING ORDER**

    **COMES NOW** the Plaintiff, Norberto Medina Rodriguez, through the undersigned counsel, and very respectfully states and prays:

1. On July 20, 2017, the Court entered an Order directing U.S. Magistrate Judge to

    receive evidence, hold hearings, perform legal analysis and issue a report and recommendation in order to determine whether these actions are frivolous or malicious. See, 28 U.S.C. § 1915(e)(2)(B)(i); see also, Carton v. Carroll Ventures, Inc., No. 17-0037 (KG/SCY), (D.N.M. July 10, 2017) (Molzen, Ch. M.J.)

2. Plaintiff's counsel, as officer of the Court, will cooperate in good faith to clarify any question or concern of the Court about his practice of law or his clients. For example, evidence is available, among others, as to the following matters:

    a. Plaintiff's disability at the time of the filing;

    b. That facility was a public accommodation at the time of the filing;

    c. That there were architectural barriers at the facility time of the filing;

    d. Plaintiff's standing at the time of the filing;

    e. Defendants' historic compliance or noncompliance with the ADA;

1

f. The results of the lawsuit for the benefit of the society at large. For example, evidence as to whether the ADA deficiencies cured, whether there outstanding work to be done at the property or whether defendant is complying with its obligations under the Settlement Agreement (in cases where there is a settlement agreement).

g. Evidence that there is no litigation funding company involved in cases filed by the undersigned and that Plaintiff's counsel funds his practice using credit cards and his personal income;

h. Evidence that plaintiff's counsel clients are not employees or contractors hired as "testers" by Attorney José Carlos Vélez Colón or any other entity;

i. Evidence that Plaintiff's counsel clients are testers because they freely and voluntarily seek to identify and point out violations to the law, as they want to promote change and are tired of the widespread violations to their rights in Puerto Rico;

j. Evidence that Plaintiff's counsel clients are bona fide clients because they freely and voluntarily want to buy, assess, or see the goods and/or services, just like any other person without disability can do;

k. Evidence that Plaintiff's counsel clients were informed that the ADA does not require a pre-litigation notice to the defendant or exhaustion of administrative remedies;

l. Evidence that Plaintiff's counsel clients believe that it is a landlord and tenant obligation to comply with the law before doing business;

    m. Evidence that Plaintiff's counsel clients did not condition the filing to a pre-litigation notice to the defendant or exhaustion of administrative remedies;

    n. Evidence that Plaintiff is aware that the monetary recovery under the ADA is for statutory attorney fees and costs of the lawsuit;

    o. Evidence of any other matter readily available.

3. However, given that there are numerous factual and legal disputes in each lawsuit case, the undersigned hereby requests reasonable notice of any matter of concern to the Court.

4. That said, there are other legal concerns. For example, In <u>Carton v. Carroll Ventures, Inc.</u>, No. 17-0037 (KG/SCY) (D.N.M. July 10, 2017) (Molzen, Ch. M.J.), ninety-nine (99) cases were consolidated **for the limited purpose of addressing Plaintiff's motion for leave to proceed in forma pauperis pursuant to 28 U.S.C. § 1915(e)(2)(B).** However, here, there is no motion for leave to proceed in forma pauperis before the Court. Thus, there is no common matter to consolidate under Fed. R. Civ. P. 42(a)(1) that will promote efficiency and economy or that will avoid conflicting decisions. Virtually every ADA case is unique because each case involves:

    a. A unique property and *situs*;

    b. Different owners (landlords) or operators (tenants);

    c. A property that must be examined for ADA compliance as part of the litigation and different standards apply depending on the date of the construction or alterations to the property;

    d. A unique factual and legal dispute related to the plaintiff's standing to sue.

        a) The issue of standing is a disputed issue of law and fact in virtually all cases brought under Title III of the ADA—nationwide. For example,

      there should be no major issues concerning an ADA plaintiff's standing to sue the nearest supermarket from his or her home, but standing issues would certainly arise concerning a plaintiff's ability to buy gas in a gas station located 75 miles away in an area that he or she does not frequently visit. Similarly, a plainiff's standing to sue Plaza Las Americas, for example, differs from the analysis of his or her standing to sue Macy's Union Square (San Francisco, California), particularly if he or she has never been in California and does not intent to travel to San Francisco, California. But proximity is not determinant, because a plaintiff will likely travel from the Puerto Rico metropolitan area to Cabo Rojo, Puerto Rico to stay in a hotel, but not *merely* to buy gas. The above examples show that a plaintiff's standing to sue under Tittle III of the ADA requires a fact-intensive, case-by-case analysis, rather than rule-based approach.

5. A plaintiff is subject to preliminary screening pursuant to 28 U.S.C. § 1915(e) after his or her motion for leave to proceed without prepayment of fees is granted. <u>Audette v. Tiverton Housing Authorithy</u>, Civil No. 17-133S (D.R.I. May 1, 2017) ("Having granted IFP status, I am required by statute to further review Plaintiff's Complaint *sua sponte* under 28 U.S.C. § 1915(e)(2)"). Once the in forma pauperis status is granted to the Plaintiff, preliminary screening is mandatory under 28 U.S.C. § 1915(e)(2). Consequently, when a plaintiff seeks to file a complaint without prepayment of the filing fee, summonses do not issue until the court reviews the complaint and determines that it satisfies the substantive requirements of 28 U.S.C. § 1915. However, there is no

statutory authority action pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) to dismiss when the Plaintiff pays the filing fee, as here, rather than requesting permission to proceed in forma pauperis.

6. Defendant's attempts to argue that this case was abusive, brought in bad faith, frivolous, or malicious is representative of a troubling trend in which disability access defendants attack the motives of plaintiffs and their counsel in nearly <u>any case</u> brought to enforce the right to equal access guaranteed by the ADA. While many defendants seem to suggest that a plaintiff's meritorious claims are annoying, difficult for businesses, or otherwise objectionable,[1] that is an argument for the legislature, not the Courts. The court in <u>Kittok v. Leslie's Poolmart, Inc.</u>, 687 F. Supp. 2d 953, 959 (C.D. Cal. 2009) addressed this very argument by observing:

> The persistence of plaintiffs in bringing multiple lawsuits alleging unequal access to places of public accommodation does not demonstrate wrongdoing by plaintiffs any more than it shows a hesitation of businesses to comply with the law. . . [ ] For the ADA to yield its promise of equal access for the disabled, it may indeed be necessary and desirable for committed individuals to bring serial litigation advancing the time when public accommodations will be compliant with the ADA.

Id. at 959 (quoting <u>Evergreen Dynasty Corp.</u>, 500 F.3d 1047, 1062 (9th Cir. 2007)) (internal quotation marks omitted); <u>Campbell v. Moon Palace, Inc.</u>, No. 11-60274-CIV, 2011 WL 3648562, at * 5 (S.D. Fla. Aug. 19, 2011) (same). Plaintiff is not stripped of standing by virtue of the number of lawsuits he has filed. Campbell, 2011 WL 3648562, at * 5. See also <u>Jankey v. Poop Deck</u>, 537 F.3d 1122, 1132 (9th Cir. 2008) (disapproving

---

[1] There are many myths and misconceptions regarding accessibility lawsuits. See e.g. https://www.ada.gov/pubs/mythfct.txt. See also, <u>Enforcement Activities</u> of the U.S. Department of Justice: https://www.ada.gov/enforce_current.htm#TitleIII.

of district court's denial of fees in part based on "Plaintiff's counsel's numerous other lawsuits in the Central District of California [as] those cases are not a part of the record here."); Wilson v. Pier 1 Imports (US), Inc., 411 F.Supp.2d 1196, 1199 (E.D.Cal.2006) (finding record of litigiousness did not establish bad faith on part of plaintiffs). See also, Lugo v. 141 NW 20th Street Holdings, LLC, Civil No. 12-10440 (S.D. Fla Jun 29, 2012) (rejecting defendant's accusation that Plaintiff "cut-and-paste list" of violations, taken from other ADA complaints filed by Plaintiff undermined his standing to sue). Similarly, in Segal v. Rickey's Restaurant and Louge, Inc., Civil No. 11-61766 (S.D. Fla. Jun 25, 2012) the Court noted:

> The Court is not persuaded by Defendant's assertion that Plaintiff, by filing multiple lawsuits, is "pervert[ing]" the ADA and is a "pawn" for the generation of attorney's fees. Instead, the Court notes that filing suit to remedy architectural barriers constitutes a "legal recourse to redress [ ]discrimination" and allows the disabled to "fully participate in all aspects of society" 42 U.S.C. § 12101(a)(1) and (4). Furthermore, the ADA authorizes a court, in its discretion, to "allow the prevailing party, other than the United States, a reasonable attorney's fee . . ." 42 U.S.C. § 12205 (emphasis added). Should Plaintiff prevail, Defendant is not prevented from arguing that Plaintiff should not recover attorney's fees.

7. Use of Prior Complaints as Templates. The use of prior lawsuits as templates in litigation is common in many areas of law, such as foreclosure litigation, collection, landlord/tenant disputes, corporate law, family law, and torts. In fact, the U.S. District Court of the District of Puerto Rico, through Pro Se Forms available online to the public,[2] provides templates of complaints for employment discrimination,[3] Section 1983 litigation, habeaus corpus, and general civil litigation.[4] For over two decades, litigants in

---

[2] http://www.prd.uscourts.gov/?q=pro-se-forms
[3] http://www.prd.uscourts.gov/sites/default/files/documents/17/Employment_Discrimination_Complaint_Form.pdf.
[4] "General Complaint Form" provided by the U.S. District Court for the District of Puerto Rico. http://www.prd.uscourts.gov/sites/default/files/documents/17/Civil_Complaint_Form.pdf (Accessed on July 27, 2017).

accessibility lawsuits have been using templates nationwide. It is correct that Plaintiff's pleading is based on a prior template, but the claim is sufficiently pled, supporting the relief requested under Rule 8 of the Federal Rules of Civil Procedure. Owners of properties –landlords– and operators of businesses –tenants– who have made no attempt to comply with the ADA will almost always violate the same mobility-related ADA sections. The ADA contains various requirements designed specifically to assist individuals with mobility-related issues. If the facility was not, assessed, built or renovated to conform to the ADA's requirements, it would be fortuitous if the facility did not violate these various mobility-related ADA sections. If these violations exist, it would be unusual for a disabled person and not encounter the problems stemming from the violations. The undersigned does not attempt to create artificial distinctions between the violations that different ADA clients of the undersigned encounter at different non-compliant facilities and therefore the various Complaints dealing with these facilities usually contain similar lists of violations. See e.g. <u>Loskot v. D & K Spirits, LLC</u>, No. 2:10-cv-0684-WBS-DAD, 2011 WL 567364 at *3 (E.D. Cal. Feb. 15, 2011) (noting that, although "plaintiff's complaint is largely boilerplate, it is sufficient to support the requested relief" under the ADA for purposes of default judgment). The disabled, like plaintiff, continuously visit many places during his or her life. Many others suffer accessibility discrimination but are not willing or do not know how to fight for their own rights. Those who seek to promote change and point out those who violate federal law should not be required to draft a new complaint from scratch for every lawsuit as the "price" for invoking their rights. Not only it would be a miscarriage of justice, it would result in waste of private resources. For example, because a plaintiff can provide notice of

the claim under Rule 8 in a cost-effective manner by using prior complaints as a template, defendant is required to pay <u>less</u> in statutory attorney fees and costs. The use of templates promotes access to justice, promotes judicial efficiency, and maximizes the use public resources in a cost-effectively manner, as it allows the Court to be a proactive player in the much-needed transformation that is required in Puerto Rico for the benefit of the disabled community. Plaintiff very respectfully submit that the use of templates in civil rights litigation should be *encouraged* by the Court in accessibility lawsuits.  Today, 27 years after the Americans with Disabilities Act (ADA) was signed into law on July 26, 1990, a significant number of facilities egregiously fail to with the standards in Puerto Rico. The small number of lawsuits under Title III of the ADA by pro se parties or parties represented by counsel since 1990 does not represent that there are no architectural barriers in Puerto Rico. In fact, lack of enforcement promotes even more barriers and unfair competition between those sensible businesses that consider the law and those businesses who simply ignore it or fail to take commonsense-based measures to provide access.  It shows that state and federal courts need to be increasingly accessible to the disabled. A strong, democratic civil justice system is critical to safeguarding individual rights and promoting public health, equal treatment, and safety for the disabled.

8. <u>Retaliation Against ADA Plaintiffs by the Defendant</u>. Section 12203(b) provides, in relevant part, as follows:

> (b) Interference, coercion, or intimidation
> It shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this chapter.
> 42 U.S.C. § 12203(b).

This section prohibits "harassment against those who are simply exercising their ADA rights." Castillo-Antonio v. Natalie Esperanza, Civil No. 13-5256 (N.D. Cal. Jan 22, 2015)(quoting Wilson v. Murillo, 163 Cal. App.4th 1124, 1138 (2008)). No disabled person should be required to divulge in discovery (or any other special proceeding) the details of every other ADA lawsuit ever brought, as the "price" for prosecuting an action to enforce the ADA. To order a plaintiff to be subjected to this intrusion solely based on having filed more than one ADA action, and being accused of thereby of being a "professional plaintiff," would be unfair and a miscarriage of justice and a potential violation to § 12203(b). This may be an appropriate situation to enforce a rule necessary to protect the enforcement of the ADA in light of the attacks by Defendant at Docket No. 18-20. This is supported by § 12203's prohibition against retaliation: that no disabled person who files a "meritorious" ADA lawsuit should have to later face questioning about "that suit" as the price for filing any other ADA action. As matter of policy under § 12203, that the fact of plaintiff filing —and wining— other ADA lawsuits is not admissible at trial. Also, there is another practical reason to prohibit in effect re-litigation of ADA lawsuits. Aside from the constitutional and § 12203 issues, if evidence of other lawsuits were introduced at all, plaintiff would have the right to disclose all relevant facts of the lawsuits, their objectives, and results in each case. The expenditure of time to deal fairly with the full merits of multiple previous meritorious lawsuits under the ADA would be phenomenal. Re-litigation of each previous meritorious lawsuit under the ADA would be a waste of the Court's time and resources, and this is particularly true in many cases where there is a settlement agreement to the satisfaction of the parties, modifications were made at the property, and the defendant in those cases do not claim that the lawsuit was

legally frivolous or malicious. It is also noteworthy that in many other cases there is a Settlement Agreement in which the Defendant agrees to comply with the law; or the fact of compliance is stipulated after structural modifications to the property; or there is a remedial plan to cure any outstanding deficiency –which negates any claim that the action was legally frivolous.  It is well-known that there are systematic barriers to access in Puerto Rico in thousands of businesses and government facilities in Puerto Rico. As result of different approach in education, policy, and enforcement by the Commonwealth of Puerto Rico, coupled with many landlords and businesses failure to proactively research the law or take commonsense-based measures to increase access, there are more architectural barriers in Puerto Rico than in the contiguous United States. Not only there are relatively more barriers in Puerto Rico, the violations are worse, more egregious. No registered architect is needed to conclude that the level of compliance in states like Florida, Texas, Arizona, New Mexico, Virginia, D.C., Chicago, New York, or California is relatively superior to the level of compliance with accessibility laws in Puerto Rico, which is why *some* ADA accessibility action in *those* jurisdictions are for minor violations, i.e. a landlord or tenant sued because a bathroom mirror is an inch too high. Given this scenario, why would a plaintiff in Puerto Rico procure to file lawsuits for minor violations when it is undeniable that there is a "sea" of egregious violations to federal law in Puerto Rico?  What is more, as matter of reality from the perspective of the Plaintiffs' bar,[5] there is little or no incentive to file a lawsuit for a ridiculously minor violation. If there if a ridiculously minor violation and a lawsuit is filed, the violation may be quickly corrected, and the action becomes moot without the possibility of reimbursement of the filing fee or statutory attorneys' fees.

---

[5] Plaintiff's counsel makes this statement solely on his own behalf, not on behalf of the plaintiffs' bar.

9.  No prior notice to the defendant or state authorities about the ADA issues was provided and such notice is not required under the law. In Medina-Rodriguez v. Fernandez Bakery, Inc. et al, Civil No. 16-2578 (FAB) (D.P.R. June 14, 2017), the Court denied defendant's motion to dismiss for, among others, alleged failure to exhaust administrative remedies. Judge Besosa is not alone in his ruling; the majority of courts across the country addressing this issue have come to the same conclusion that Title III of the ADA does not incorporate the notice requirement of Title II of the Civil Rights Act. See, e.g., Hermanson, 1997 WL 33471624, at 3-4; Botosan v. Paul McNally Realty, 216 F.3d 827, 831 (9th Cir. 2000) ("§ 12188(a)(1) does not implicitly incorporate § 2000a-3(c). A plaintiff in a private Title III action is not required to provide notice to any state or local agency as a prerequisite to filing suit.") (collecting cases); Burkhart v. Widener Univ., Inc., 70 F. App'x 52, 54 (3d Cir. 2003) ("The District Court here adopted the same reasoning [in Botosan], and we will do so as well."); Wyatt v. Liljenquist, 96 F. Supp. 2d 1062, 1064 (C.D. Cal. 2000) ("By its express terms, the ADA adopts only Section 2000a-3(a), which says nothing about notice or exhaustion of remedies."); Guzman v. Denny's Inc., 40 F. Supp. 2d 930, (S.D. Ohio 1999) ("To hold that the entirety of § 2000a-3 is adopted is to impermissibly render superfluous the explicit textual reference to § 2000a-3(a)."); Walker v. Asmar Ctr., LLC, 2011 WL 5822394, at *6 (E.D. Mich. Nov. 15, 2011) (agreeing with Guzman and finding plaintiff was not required to exhaust administrative remedies); Hill v. Park, 2004 WL 180044, at *3 (E.D. Pa. Jan. 27, 2004) ("Section 12188(a)(1) is clear and unambiguous, and this Court should give the statute its plain meaning."); Disabled in Action of Metro. N.Y. v. Trump Int'l Hotel & Tower, 2003 WL 1751785, at *10 (S.D.N.Y. Apr. 2, 2003) ("Plaintiffs were not required to notify state

or local authorities prior to filing this suit."); Stan v. Wal-Mart Stores, Inc., 111 F. Supp. 2d 119, 123 (N.D.N.Y. 2000) ("Because § 2000a-3(c) contains the exhaustion requirement, but was not incorporated into the ADA, the ADA does not mandate exhaustion prior to commencing suit.". See also, McInerney v. Rensselaer Polytechnic Inst., 505 F.3d 135, 138 (2d Cir. 2007) ("ADA Title III incorporates only § 2000a-3(a)."); Thomas v. Salvation Army S. Territory, 841 F.3d 632, 638 (4th Cir. 2016) (finding the plaintiff's Title III ADA claims were "not subject to the administrative exhaustion requirement"). Filing a lawsuit to remedy architectural barriers, even without prior notice to the defendant or state agencies, constitutes a valid legal recourse to redress discrimination that allows the disabled to "fully participate in all aspects of society" 42 U.S.C. § 12101(a)(1) and (4). The purported "notice" requirements will discourage businesses and landlords from acting affirmatively on their own to review their premises for potential barriers. Landlords and tenants will simply wait for a notice to review their premises. In other words, indeed of attempt to identify and remove accessibility barriers, landlords and tenants would wait for the disabled to provide "written notice" citing technical standards. In practice, this would result in less ADA compliance particularly in Puerto Rico where the issue of architectural barriers is alarming. Landlords and tenants should not wait a notice of an accessibility issue to act promptly to investigate the situation and determine what action can be taken to remove the barrier.

10. Defendant cannot show prejudice or intent to harass as a result of Plaintiff's request to pay attorney fees because Congress did indeed intentionally create an incentive for attorneys for ADA lawsuits , as the ADA itself does not provide monetary damages remedy. Rather than spend taxpayers' money by setting up a bureaucratic agency to

enforce Title III access laws and regulations, Congress left enforcement (other than by the U.S. Department of Justice in limited circumstances) to private lawsuits. Congress chose the right to recover attorney fees, litigation expenses, and costs as the incentive for attorneys to be willing to handle such cases without having to obtain from the (often low income) disabled plaintiffs. Without private lawsuits, public accommodations that still do not provide accessible facilities, would be able to continue to do so in perpetuity. Statutory attorneys' fees under the ADA are the "poor man's key to the courthouse." Otherwise only those persons rich enough to pay lawyers on an hourly basis could afford the costs of hiring counsel.  Congress recognized that private enforcement of civil rights legislation relies on the availability of fee awards: "If private citizens are to be able to assert their civil rights, and if those who violate the Nation[`s] fundamental laws are not to proceed with impunity, then citizens must have the opportunity to recover what it costs them to vindicate these rights in court." S. Rep. No. 94-1011, at 2 (1976), as reprinted in 1976 U.S.C.C.A.N. 5908, 5910." [fn. omitted]. Moreno v. City of Sacramento, 534 F.3d 1106, 1111 (9th Cir. 2008). A settlement agreement may include an award of statutory attorney fees. See e.g. Lucas v. Kmart, (2006), WL 722166 (D. Colo.) (Nationwide class of disabled persons over inaccessibility of stores in violation of the Americans with Disabilities Act, agreeing to make changes to increase accessibility to its stores, both inside and outside the building; and agreeing to pay attorneys' fees incurred in connection with the matter up to and including the date of Final Approval of this Agreement by the Court in the amount of $3,250,000). Settlement Agreement, Lucas v. Kmart Corporation, Case No. 99-cv-01923-JLK-CBS (July 21, 2006).[6] Plaintiff's counsel

---

[6] The Settlement Agreement also provides that Kmart shall pay "reasonable attorneys' fees and Costs incurred by Class Counsel after Final Approval of this Agreement for work performed by Class Counsel pursuant to this

attorney's fees and costs are obtained on a statutory basis from the defendants only, by judgment, or by settlement, and only if he wins the case. To hold that a contingent fee contract gives the attorney the beneficial rights of a real party in interest, would be to demean his profession and distort the purpose of the various acceptable methods of securing his fee.  If the disabled plaintiff is deemed to be "harassing" the defendant solely because his or her attorney is acting under a contingent fee contract, the natural consequence is that the disabled may go without counsel and, being a layman, may simply fail to assert what rights he or she has. Said practical effect of restricting an individual with disabilities access to the courts because of the contingency fee agreement, it contravenes the fundamental notions of equality and fairness, and Congress express intent to encourage enforcement of the law through private litigation.

**WHEREFORE**, Plaintiff prays for:

A. Reasonable notice of any matter of concern to the Court given that there are numerous factual and legal disputes in each lawsuit case.

B. A declaratory judgment that that the Court's preliminary screening pursuant to 28 U.S.C. § 1915(e) is limited to cases filed in forma pauperis; that accessibility lawsuits under Title II or Title III of the ADA are not subject to a heightened pleading standard or a requirement of greater specificity for particular claims; that defendants cannot show prejudice or intent to harass for lack or prior notice of any ADA deficiency or

---

Agreement or as necessary to defend this Agreement. Kmart recognizes that such Costs include, but are not limited to, any fees, costs and expenses incurred by Class Counsel in retaining an expert to assist with such work." https://www.clearinghouse.net/chDocs/public/DR-CO-0005-0011.pdf (Document hosted by The Civil Rights Litigation Clearinghouse, at the University of Michigan Law School).

administrative notice to a state or local authority or lack of prior notice the defendant; that defendant cannot show prejudice or that the Plaintiff intents to "harass" the defendant because his or her attorney is acting under a contingent fee contract to recover statutory attorney fees and costs.

C. An Order to alter the Court's order on July 20, 2017 because this case was not filed in forma pauperis.

        **RESPECTFULLY SUBMITTED**,

        **/S/JOSE CARLOS VELEZ-COLÓN, ESQ.**
        **USDC-PR NO.: 231014**
        jcvelezcolon@gmail.com

        PO BOX 2013
        BAYAMON PR 00960

        TEL: (787) 599-9003

        *Attorney for Plaintiff*

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY THAT I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System, which in turn will send notification of such filing to all attorneys of record.

In San Juan, Puerto Rico, this 28th day of July 2017.

        Respectfully submitted,

        **/S/JOSE CARLOS VELEZ-COLÓN, ESQ.**
        **USDC-PR No.: 231014**
        jcvelezcolon@gmail.com